IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| NORMAN KATZ AND ROSEANN MANNING (FORMERLY KATZ), <br><br> Plaintiffs, <br><br> vs. <br><br> AMERICAN EXPRESS COMPANY, EXPERIAN CORP., EQUIFAX, INC., and TRANS UNION CORP. <br><br> Defendants. | CIV. NO. 14-00084 JMS-RLP <br><br> ORDER GRANTING DEFENDANT AMERICAN EXPRESS TRAVEL RELATED SERVICE'S MOTION TO DISMISS AMENDED COMPLAINT, AND GRANTING LEAVE TO AMEND |

## ORDER GRANTING DEFENDANT AMERICAN EXPRESS TRAVEL RELATED SERVICE'S MOTION TO DISMISS AMENDED COMPLAINT, AND GRANTING LEAVE TO AMEND

## I. INTRODUCTION

In this action, Plaintiffs Norman Katz and Roseann Manning (f/k/a Roseann Katz)[1] (collectively "Plaintiffs"), proceeding *pro se*, allege violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et. seq.*; and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1602, *et seq.*, against American Express Company ("AMEX"),[2] Experian Corp. ("Experian"), Equifax, Inc. ("Equifax"),

---

[1] To avoid confusion, because the Amended Complaint refers interchangeably to Roseann Manning and Roseann Katz, the court refers to her simply as "Roseann."

[2] AMEX asserts that the proper Defendant is "American Express Travel Related

(continued...)

and Trans Union Corp. ("Trans Union") (collectively "Defendants").  Plaintiffs contend that AMEX violated FCRA and/or TILA by (1) failing to report "personal payments" from their "personal joint checking account" on their credit history for their AMEX "corporate credit card" (and failing to disclose this practice), Doc. No. 7, Am. Compl. at 3; and (2) providing false information to credit reporting agencies by reporting a $6,441.25 debt to AMEX as a personal liability of Roseann.  *Id.* at 3.  They also allege that all Defendants failed to correct Plaintiffs' individual credit reports to indicate the timely payments that Plaintiffs made on their AMEX credit card.  *Id.* at 2.

On June 17, 2014, the court dismissed the credit reporting agency ("CRA") Defendants Experian, Equifax, and Trans Union (collectively, the "CRA Defendants") for failure to state a claim, but granted Plaintiffs leave to amend.  *See* Doc. No. 49 ("June 17, 2014 Order").  Currently before the court is AMEX's Motion to Dismiss Plaintiffs' Amended Complaint.  Based on the following, the court GRANTS AMEX's Motion to Dismiss, but will also allow Plaintiffs to amend as to AMEX.  A Second Amended Complaint as to all Defendants must be filed by **September 19, 2014**.

---

[2](...continued)
Services," and it is improperly sued as "American Express Company."  The court refers to both as AMEX.

## II. BACKGROUND

**A.     Factual Background**

The factual background is set forth in this court's June 17, 2014 Order, and the court draws upon that Order here, repeating and supplementing the relevant factual allegations.  As alleged in the Amended Complaint, Plaintiffs obtained a "corporate credit card" in 1994 in response to a mailed solicitation from AMEX for their business, Second Equity Concepts, Ltd. ("SECL").  Doc. No. 7, Am. Compl. at 2.  From 1994 through 2010, Plaintiffs made almost all of their personal purchases on this credit card, and made timely payments using their personal joint checking account.  *Id.* at 3.

In 2010, Plaintiffs applied for a mortgage and discovered that their credit bureau reports did not reflect any of their timely AMEX credit card payments.  *Id.*  AMEX never advised Plaintiffs that their personal payments on their corporate credit card would not be counted as positive credit on their personal credit reports.  *Id.*  AMEX refused to issue Plaintiffs a personal credit card and to correct Plaintiffs' credit reports despite Norman Katz's requests.  *Id.* at 3-4. Moreover, although the credit reports did not reflect the timely credit card payments, AMEX "recently" reported to unspecified CRA Defendants that Roseann owed a debt of $6,441.25 to AMEX as a personal liability.  *Id.* at 4.

As a result, Plaintiffs contend that (1) they suffered a credit score that is "much lower than it otherwise would have been had [AMEX] reported personal payments on the SECL credit card properly;" (2) Roseann is unable to buy a new "automobile even though she otherwise would qualify with the Hawaii State Credit Union;" and (3) Roseann must pay $200 more per month to buy a new car. *Id.* at 4.

It is unclear exactly what causes of action are being asserted in the Amended Complaint. It is written in narrative form, and fails to divide claims into separate Counts or distinct causes of action as required by Federal Rule of Civil Procedure 10(b) ("A party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances. . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count[.]"). Nevertheless, the Amended Complaint cites two particular sections of FCRA (15 U.S.C. § 1681, and § 1681s-2), as well as TILA, 15 U.S.C. § 1601 (as "implemented by Regulation Z"). Doc. No. 7, Am. Compl. at 7. It also alleges that "[b]ecause of [AMEX's] fraud in the inducement, Katz's credit score was much lower than it otherwise would have been had [AMEX] reported personal payments[.]" *Id.* at 4. And it contends that AMEX "misled the Plaintiff[s] by misrepresenting the benefits of having a Corporate

Credit Card." *Id*. at 7. The court infers that, at a minimum, the Amended Complaint alleges that Defendants violated both FCRA and TILA, although it is unclear whether it also raises state law claims.

Plaintiffs seek damages and restitution in the form of corrected credit reports that reflect their timely credit card payments. *Id.* at 8. They also contend that AMEX "should be ordered to accept the balance claimed of $6,441.25 as being made on a timely basis when paid." *Id.* Finally, they seek "statutory damages, court costs, and attorney's fees and expenses and such other damages as this court may deem appropriate including punitive damages." *Id*. at 9.

**B.      Procedural Background**

Plaintiffs filed this action against AMEX on February 19, 2014, Doc. No. 1, and filed an Amended Complaint adding CRA Defendants on March 19, 2014. Doc. No. 7. On June 17, 2014, this court dismissed the Amended Complaint with leave to amend as to the CRA Defendants. Doc. No. 49. Meanwhile, on June 6, 2014, AMEX filed the instant Motion to Dismiss. Doc. No. 45. On July 22, 2014, Plaintiffs filed their Objection, Doc. No. 57, and on July 28, 2014, AMEX filed a Reply. Doc. No. 60. Pursuant to Local Rule 7.2(d), the court finds this matter suitable for disposition without a hearing.[3]

---

[3] On August 18, 2014, Plaintiffs wrote a letter to the court with additional argument that
(continued...)

# III.  STANDARD OF REVIEW

Plaintiffs are proceeding *pro se*; consequently, the court liberally construes their pleadings.  *See Eldridge v. Block,* 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants." (citing *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam))).  The court also recognizes that "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action."  *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).  The court should not, however, advise a litigant how to cure defects.  This type of advice "would undermine district judges' role as impartial decisionmakers."  *Pliler v. Ford*, 542 U.S. 225, 231 (2004).

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

---

[3](...continued)

they state they would have presented at a hearing.  Because AMEX has not had a chance to respond to this letter, the court has not considered any of the arguments in Plaintiffs' letter.

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. Factual allegations that only permit

the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Iqbal*, 556 U.S. at 679.

## IV. ANALYSIS

As to FCRA, Plaintiffs argue that AMEX "inaccurately, incompletely, and falsely reported [to the CRA Defendants] that Roseann Katz owed [AMEX] $6,441.25," in violation of 15 U.S.C. § 1681s-2. Doc. No. 57, Pls.' Obj. at 4. And as to TILA, Plaintiffs argue that AMEX violated the statute or its regulations by "incomplete[ly] and deceptive[ly]" failing to "make full disclosure to [Plaintiffs] as to the negative impact on their personal credit from using a Corporate Credit card to make their personal purchases." *Id.* at 6. The court considers each statutory claim separately.

### A. Plaintiffs Fail to State a Plausible FCRA Claim

AMEX asserts three grounds for dismissing Plaintiffs' FCRA claim: (1) there is no private right of action for violations of § 1681s-2(a); (2) the Amended Complaint fails to allege all the required elements of a § 1681s-2(b) violation; and (3) Plaintiffs' claim is untimely pursuant to § 1681p. Doc. No. 45, Def.'s Mot. at 9-13. The court addresses each argument in turn.

///

///

8

### 1. *No Private Right of Action Exists for Violations of § 1681s-2(a)*

The Amended Complaint cites § 1681s-2, but only specifically quotes

§ 1681s-2(a)(1), which generally requires "furnishers" (such as AMEX) of

information to CRAs to provide accurate information:

> (A) Reporting information with actual knowledge of errors
>      A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.
>
> (B) Reporting information after notice and confirmation of errors
>      A person shall not furnish information relating to a consumer to any consumer reporting agency if --
>      (i) the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and
>      (ii) the information is, in fact, inaccurate.

15 U.S.C. § 1681s-2(a)(1).

Plaintiffs contend -- apparently referring to the $6,441.25 that AMEX

reported as a "personal liability" of Roseann to an unspecified credit report agency

-- that § 1681s-2(a)(1) was violated "[b]ecause of the numerous phone

conversations between Norman Katz and the [AMEX] collection personnel,

[AMEX] had 'reasonable cause to believe' that the nature of Roseann's alleged

obligation was not as [AMEX] reported it."  Doc. No. 7, Am. Compl. at 6-7.

But FCRA expressly precludes a private cause of action to enforce violations of § 1681s-2(a). *See Gorman v. Wolfpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009) ("Duties imposed on furnishers under subsection (a) are enforceable only by federal or state agencies."); *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002) (noting that "Congress limited the enforcement of the duties imposed by § 1681s-2(a) to governmental bodies"). And although "FCRA expressly creates a private right of action for willful[4] or negligent[5] noncompliance with its requirements," *Gorman*, 584 F.3d at 1154,

---

[4] 15 U.S.C. § 1681n, regarding civil liability for willful noncompliance, provides in part:

(a) Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of --
    (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; . . .
    (2) such amount of punitive damages as the court may allow; and
    (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

[5] 15 U.S.C. § 1681o, regarding civil liability for negligent noncompliance, provides in part:

(a) Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of --
    (1) any actual damages sustained by the consumer as a result of the failure; and
    (2) in the case of any successful action to enforce any

(continued...)

"§ 1681s-2 limits this private right of action to claims arising under [§ 1681s-2(b)], the duties triggered upon notice of a dispute from a CRA." *Id.* That is, Plaintiffs may generally sue under § 1681s-2(b), but not under § 1681s-2(a).

In response, Plaintiffs argue that even if FCRA does not specifically provide a private remedy under § 1681s-2(a), "there is an implied remedy . . . [o]therwise, [FCRA] is just empty words and cannot be enforced." Doc. No. 57, Pls.' Obj. at 7. The court, however, has no authority to find an implied private remedy for a violation of § 1681s-2(a). A private right of action "to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("[C]ourts may not create [a private cause of action], no matter how desirable that might be as a policy matter, or how compatible [it may be] with the statute."). And here, Congress specifically intended to preclude a private right of action for § 1681s-2(a). *See* §§ 1681s-2(c) & (d).

In short, a claim that AMEX violated § 1681s-2(a) is DISMISSED with prejudice.

///

///

_____

[5](...continued)
liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

## 2. Plaintiffs Fail to State a Plausible § 1681s-2(b) Claim

Further, although a private cause of action exists for violations of § 1681s-2(b), *see Gorman*, 584 F.3d at 1154, the court cannot discern whether Plaintiffs are actually asserting such a claim here. The Amended Complaint does not mention § 1681s-2(b), and Plaintiffs' Objection to AMEX's Motion focuses only on § 1681s-2(a). Assuming, however, that the Amended Complaint raises a § 1681s-2(b) violation (construing the Amended Complaint liberally in favor of the pro se Plaintiffs), it fails to allege all the necessary elements of such a claim.[6]

---

[6] Subsection 1681s-2(b)(1) provides "Duties of furnishers of information upon notice of dispute" as follows:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--
> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly --
> (i) modify that item of information;

(continued...)

Although Plaintiffs allege that AMEX failed to correct allegedly false information, any duty to investigate (and, if appropriate, correct information provided to a CRA) under § 1681s-2(b) is not triggered unless a CRA first notifies the furnisher.  *See Gorman*, 584 F.3d at 1154 ("These duties arise only after the furnisher receives notice of dispute from a CRA.").  The Amended Complaint alleges that Plaintiffs communicated directly with AMEX, but this allegation is insufficient -- the notification must come from a CRA.  *See, e.g.*, *Drew v. Equifax Info. Servs.*, 690 F.3d 1100, 1106 (9th Cir. 2012) ("[Plaintiff's] direct complaint to [the furnisher] . . . would not have triggered any duty since it was unaccompanied by CRA notification.").

Without factual allegations that Plaintiffs notified a CRA of the alleged dispute, the Amended Complaint fails to state a claim for violation of § 1681s-2(b).  *See, e.g.*, *Amina v. WMC Mortg. Corp.*, 2011 WL 1869835, at *11 (D. Haw. May 16, 2011) ("[I]t is only after (1) a consumer has notified a [CRA] of an inaccuracy, (2) the [CRA] has notified the furnisher, and (3) the furnisher has failed to take action, that a consumer may sue the furnisher.") (quoting *Diana I Am v.. Nat'l City Mortg. Co.*, 2010 WL 571936, at *10 (D. Haw. Feb. 17, 2010)).

---

[6](...continued)
                    (ii) delete that item of information; or
                    (iii) permanently block the reporting of that item of
                    information.

Accordingly, to the extent the Amended Complaint makes a claim under § 1681s-2(b), the claim is DISMISSED. Because it is unclear whether further amendment would be futile, this dismissal is with leave to amend. *See, e.g.*, *Lucas*, 66 F.3d at 248 ("Unless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action.").

### 3. *FCRA's Statute of Limitations*

AMEX also argues that any FCRA claim is barred by FCRA's statute of limitations because Plaintiffs allege that they first discovered in 2010 that AMEX did not report their timely payments to any credit reporting agency -- and they did not file suit until February 19, 2014. In this regard, 15 U.S.C. § 1681p provides:

> An action to enforce any liability created under this subchapter may be brought . . . not later than *the earlier of* . . . 2 years after the date of discovery by the plaintiff of the violation that is the basis of such liability . . . or . . . 5 years after the date on which the violation that is the basis for such liability occurs.

15 U.S.C. § 1681p (emphasis added).

Nevertheless, the Amended Complaint alleges that "*[r]ecently* [AMEX] reported Roseann Katz as owing a debt of $6,441.25 . . . as a personal liability . . . on her credit bureau reports." Doc. No. 7, Am. Compl. at 4 (emphasis

added).  The Amended Complaint does not allege the date of AMEX's allegedly

false reporting to the CRAs.  Absent such information, the court cannot determine

whether Plaintiffs' § 1682s-2(b) claim is time-barred in a motion to dismiss.

Accordingly, the statute of limitations does not provide a basis to dismiss this

FCRA claim.

**B.    Plaintiffs Fail to State a Plausible TILA Claim**

AMEX next argues that Plaintiffs' TILA claim fails because they

allege that the AMEX credit card was issued to their business, SECL, and not to

either (or both) of the Plaintiffs as individuals.  *See* Doc. No. 7, Am. Compl. at 2-3

("The American Express written inducement offered a means for creating credit for

a newly formed corporation, Second Equity Concepts, Ltd. (SECL), a then Hawaii

corporation.").  The court agrees.

By its terms, TILA does not apply to "[c]redit transactions involving

*extensions of credit primarily for business*, commercial, or agricultural purposes, or

. . . *to organizations*."  15 U.S.C. § 1603(1) (emphases added).  TILA was enacted

"to assure a meaningful disclosure of credit terms so that the *consumer* will be able

to compare more readily the various credit terms available to him and avoid the

uninformed use of credit, and to protect the *consumer* against inaccurate and unfair

credit billing and credit card practices."  15 U.S.C. § 1601(a) (emphases added).

Under TILA:

> The adjective "consumer", used with reference to a credit
> transaction, characterizes the transaction as one in which
> the party to whom credit is offered or extended is a
> natural person, and the money . . . which [is] the subject
> of the transaction [is] primarily for personal, family, or
> household purposes.

15 U.S.C. § 1602(i).  Thus, to state a TILA claim, credit must be extended to "a

natural person, and the money . . . received . . . must be 'primarily for personal,

family, household, or agricultural purposes.'"  *Am. Express Co. v. Koerner*, 452

U.S. 233, 241 (1981); *see also* 12 C.F.R. § 226.2(a)(12) ("Consumer credit means

credit offered or extended to a consumer primarily for personal, family, or

household purposes.").

The Amended Complaint alleges several times that the credit card at

issue was a "corporate credit card."  Doc. No. 7, Am. Compl. at 2, 3, 7.  It alleges

that the corporate credit card was "a means for creating credit for" Plaintiffs'

company.  *Id.* at 2.  It alleges that "Norman Katz, Roseann's husband, was the

CEO of the corporation and Roseann was the CFO."  *Id.*  Thus, a fair reading of the

Amended Complaint indicates that the credit card was issued to Plaintiffs' business

(SECL), and was not "consumer credit" for purposes of TILA.  Given these

allegations, TILA does not apply.  *See, e.g.*, *Koerner*, 452 U.S. at 243-44 (holding

that TILA does not apply where "[t]he undisputed facts of this case reveal that the [cardholder] obtained the right 'to incur debt and defer its payment' from American Express primarily for business, not consumer, purposes"); *Prifti v. PNC Bank, N.A.*, 2001 WL 1198653, at *3 (E.D. Pa. Oct. 9, 2001) (citations omitted) (dismissing TILA claim where plaintiffs conceded that credit was extended to corporation and not directly to plaintiffs, even though plaintiffs used unsecured credit line primarily for personal purposes); *Eze v. JP Morgan Chase Bank, NA*, 2010 WL 3189813, at *6 (E.D.N.Y. Aug. 11, 2010) ("TILA pertains solely to the extension of consumer credit. It is, however, undisputed that the credit card at issue here was a business, and not a consumer, credit card, meaning that TILA is inapplicable."). The Amended Complaint thus fails to state a valid TILA claim.

Nevertheless, it is premature to dismiss this claim with prejudice. Plaintiffs argue in their Objection that they "applied for and received an [AMEX] 'Corporate Gold Card.'" Doc. No. 57-21, Pls.' Obj. at 1. They argue that such a card is not a "business" card, although such a distinction is not alleged in the Amended Complaint. The Amended Complaint -- although unclear -- might be seeking to allege that Plaintiff used their AMEX card for all their personal expenses, with AMEX's knowledge and approval. *See* Doc. No. 7, Am. Compl. at 3 ("[A]lmost everything [Plaintiffs] purchased was paid for by their Corporate

Credit Card.").  The Amended Complaint alleges that AMEX treats "the personal credit extended [to Roseann] and paid with personal funds . . . as a personal obligation," at the same time it construes the credit card account as a "corporate transaction," *id.* at 4-5, "to avoid the requirements of consumer protection laws." *Id.* at 8.  It alleges that "[AMEX] cannot have its cake and eat it too; *i.e.*, it cannot, on the one hand, treat the personal credit extended and paid with personal funds as a corporate transaction and then also treat the corporate legal liability as a personal obligation of Roseann."  *Id.* at 4-5.

It thus might be possible that Plaintiffs are claiming that the credit card -- whatever its title -- was actually "consumer credit" because it was used *not* "primarily for business purposes" but rather primarily for consumer purposes.  *See Koerner*, 452 U.S. at 244 ("The overall purpose of the Koerner Company's account is clear, and respondent has not claimed that the company sought its account with American Express primarily for consumer purposes."); *id.* ("[The] evidence is sufficient to indicate that the account was opened primarily for business or commercial purposes."); *id.* at 245 ("We do not suggest that it always will be easy to determine whether the opening of a credit account involves an extension of consumer credit.").  *See also, e.g.*, *In re Johnson*, 2010 WL 4668353, at *3 (N.D. Cal. Nov. 9, 2010) (denying motion to dismiss TILA claim because of "factual

question as to whether Plaintiff and Defendant entered into a consumer credit transaction" given evidence that the loan was "a business loan" for which some loan proceeds were "to be used for a nonbusiness . . . purpose").[7]

The Amended Complaint does not allege sufficient facts to establish that the credit card account issued by AMEX was a consumer credit transaction to which TILA might conceivably apply. For example, Plaintiffs fail to allege facts establishing precisely to what person or persons or entity credit was extended. Nor do Plaintiffs allege what percentage of credit obtained via the credit card account was for their business, and what percentage was for personal, family, or household expenses. There are insufficient details to establish that the card was primarily for consumer purposes. In short, the Amended Complaint fails to allege facts

///

///

///

///

---

[7] To be clear, the court has not examined in detail whether any part of TILA might apply to a card issued solely to an "organization" but used primarily (or exclusively) for consumer purposes. Although *Koerner* recognized that "[t]wo elements . . . must be present in every 'consumer credit' transaction: . . . a natural person, *and* . . . 'primarily for personal, family, household, or agricultural purposes,'" 452 U.S. at 241, this question was not briefed, nor was it raised by AMEX. As it is, the court is simply recognizing that it is not clear that further amendment would be futile such that Plaintiffs should be allowed leave to amend to attempt to state a claim. *See Lucas*, 66 F.3d at 248.

establishing that TILA applies.[8]  Accordingly, the TILA claim is DISMISSED.

The dismissal, however, is with leave to amend.

## C.    Leave to Amend

A Second Amended Complaint will supersede the prior pleadings and

must be complete in itself without reference to prior superseded pleadings.  *E.g.*,

*King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled in part by Lacey v.*

*Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012) (en banc).  Should Plaintiffs choose

to file a Second Amended Complaint,[9] they must write short, plain statements

telling the court: (1) the statutory right they believe was violated; (2) the specific

basis of this court's jurisdiction; (3) the name of the defendant who violated that

right; (4) exactly what that defendant did or failed to do; (5) how the action or

---

[8]  Plaintiffs "bear[] the burden of showing that the transaction was made in connection with a consumer credit transaction and not a business credit transaction."  *Prifti v. PNC Bank, N.A.*, 2001 WL 1198653, at *3 (E.D. Pa. Oct. 9, 2001) (citations omitted) (dismissing TILA claim where plaintiffs conceded that credit was extended to corporation and not directly to plaintiffs, even though plaintiffs used unsecured credit line primarily for personal purposes); *St. Hill v. Tribeca Lending Corp.*, 403 Fed. Appx. 717, 720 (3d Cir. 2010) ("To prevail on a TILA claim, St. Hill had the burden of showing that the Act applied to her case.") (citing *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 751 (3d Cir. 1974)).

[9]  On July 11, 2014, Plaintiffs filed a Second Amended Complaint, given the June 17, 2014 Order dismissing the CRA Defendants.  Doc. No. 54.  That Second Amended Complaint was striken by Entering Order on July 18, 2014, "without prejudice to Plaintiffs filing another Second Amended Complaint after the court considers and rules on [the instant Motion to Dismiss]."  Doc. No. 55.

inaction of that defendant is connected to the violation of Plaintiffs' rights; and (6)

what specific injury Plaintiffs suffered because of that defendant's conduct.

Plaintiffs must clearly designate on the face of the document that it is

the "Second Amended Complaint." Again, the Second Amended Complaint may

not incorporate any part of the original Complaint or Amended Complaint by

reference, but rather, any specific allegations must be restated or rewritten in their

entirety. Plaintiffs may include only one claim per count, and must comply with

Federal Rule of Civil Procedure 10(b). Any cause of action not already dismissed

with prejudice that is not raised in the Second Amended Complaint is waived.[10]

*King*, 814 F.2d at 567. Any Second Amended Complaint must address issues in

this Order, as well as the court's June 17, 2014 Order.

## V. <u>CONCLUSION</u>

Defendant American Express Travel Related Service's Motion to

Dismiss Amended Complaint is GRANTED. The Amended Complaint is

DISMISSED without prejudice. Plaintiffs are granted leave to file a Second

Amended Complaint in accordance with this Order and the court's June 17, 2014

---

[10] Claims that were dismissed *without* leave to amend need not be pleaded again in an amended complaint to preserve them for appeal. *See Lacey*, 693 F.3d at 928. However, "claims that have been dismissed with leave to amend and are not repled in the amended complaint will be considered waived." *Id.*

Order.  Failure to file a Second Amended Complaint by **September 19, 2014** will result in automatic dismissal of this action.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, Aug. 20, 2014.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Katz v. American Express Co., et al.*, Civ. No. 14-00084 JMS-RLP, Order Granting Defendant American Express Travel Related Service's Motion to Dismiss Amended Complaint, and Granting Leave to Amend