IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| NORMAN KATZ AND ROSEANN MANNING (FORMERLY KATZ),<br><br>    Plaintiffs,<br><br>    vs.<br><br>AMERICAN EXPRESS COMPANY, EXPERIAN CORP., EQUIFAX, INC., and TRANS UNION CORP.<br><br>    Defendants.<br>_____ | CIV. NO. 14-00084 JMS-RLP<br><br>ORDER (1) GRANTING DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION TO DISMISS "FINAL AMENDED COMPLAINT," DOC. NO. 70; (2) GRANTING IN PART AND DENYING IN PART DEFENDANT EQUIFAX, INC.'S SUBSTANTIVE JOINDER IN DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION TO DISMISS; DOC. NO. 81; AND (3) GRANTING DEFENDANT AMERICAN EXPRESS TRAVEL RELATED SERVICE'S MOTION TO DISMISS "FINAL AMENDED COMPLAINT," DOC. NO. 68 |

**ORDER (1) GRANTING DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION TO DISMISS "FINAL AMENDED COMPLAINT," DOC. NO. 70; (2) GRANTING IN PART AND DENYING IN PART DEFENDANT EQUIFAX, INC.'S SUBSTANTIVE JOINDER IN DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION TO DISMISS; DOC. NO. 81; AND (3) GRANTING DEFENDANT AMERICAN EXPRESS TRAVEL RELATED SERVICE'S MOTION TO DISMISS "FINAL AMENDED COMPLAINT," DOC. NO. 68**

## I. INTRODUCTION

In this action, Plaintiffs Norman Katz and Roseann Manning (f/k/a

Roseann Katz) (collectively "Plaintiffs"), proceeding *pro se*, allege violations of

the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et. seq*., and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1602, *et seq.*, against American Express Company ("AMEX"), Experian Corp. ("Experian"),[1] Equifax, Inc. ("Equifax"), and Trans Union Corp. ("Trans Union") (collectively "Defendants"). Plaintiffs contend that AMEX violated FCRA and/or TILA by (1) failing to report to the credit reporting agency ("CRA") Defendants Experian, Equifax, and Trans Union (collectively, "CRA Defendants") that Plaintiffs, in their individual capacities, made payments on a corporate credit card; (2) failing to disclose that personal payments on a corporate credit card are not reported on individual credit reports, and (3) providing false and/or incomplete information to CRA Defendants regarding a debt on their credit card. Plaintiffs also allege that all CRA Defendants violated FCRA by failing to respond to Plaintiffs' requests to correct their credit reports and failed to perform a full investigation regarding Plaintiffs' credit history.

On June 17, 2014, the court dismissed with leave to amend Plaintiffs' claims against the CRA Defendants. Doc. No. 49 ("June 17, 2014 Order"). On August 20, 2014, the court dismissed with leave to amend Plaintiffs' claims

---

[1] AMEX asserts that its name is "American Express Travel Related Services," and Experian asserts that its name is Experian Information Solutions, Inc. The court refers to these companies as AMEX and Experian respectively.

against AMEX. Doc. No. 66 ("Aug. 20, 2014 Order"). As a result, Plaintiffs filed

an amended pleading entitled "Final Amended Complaint," which the court

construes as the Second Amended Complaint ("SAC").

Currently before the court are Motions to Dismiss brought by

Experian (substantively joined by Equifax, Doc. No. 81) and AMEX. Experian

and Equifax argue that the SAC should be dismissed for failure to comply with

Federal Rule of Civil Procedure 10(b), and Experian, Equifax, and AMEX all

argue that the SAC should be dismissed for failure to state a claim upon which

relief may be granted. Based on the following, the court (1) GRANTS Experian's

Motion to Dismiss; (2) GRANTS in part and DENIES in part Equifax's

substantive joinder; and (3) GRANTS AMEX's Motion to Dismiss, all with leave

to amend. Plaintiffs may file a Third Amended Complaint by December 16, 2014.

## II. <u>BACKGROUND</u>

### A.    **Factual Background**

The SAC provides a winding narrative of allegations, provided in

sections entitled "Introduction," "Facts" (with subsections for each Defendant),

"Law and Analysis," and "Conclusion." The SAC warns in its Introduction that

these allegations "should be understood to be just examples of possible other

violations and misdeeds that may be introduced in evidence or found out in the

discovery process." Doc. No. 67, SAC at 1. The Introduction further outlines a number of different concepts -- that (1) Defendants ignored Plaintiffs' letters disputing that Roseann Manning should be held personally liable for a debt on the corporate credit card for Plaintiffs' business Second Equity Concepts Limited ("SECL") *id.* at 2; (2) FCRA should not exempt CRAs from state libel laws, *id.* at 3; (3) the algorithm used by CRAs to measure individual credit is inadequate, misleading, fraudulent, and a denial of due process, *id.* at 3-7; and (4) the CRAs "are an oligopoly or 'street corner' business that by economic necessity mimic each other reinforcing monopolistic practices prohibited under the Sherman and Clayton antitrust acts." *Id.* at 7. Despite this sweeping Introduction and reference to a number of possible theories for Plaintiffs' claims, the specific allegations of the SAC as to each Defendant neither address all of these concepts, nor fully explain the particular issues in dispute. The court first outlines the particular allegations as to each Defendant, and then addresses the "Law and Analysis" section of the SAC.

## 1. *Allegations as to Each Defendant*

### a. *Experian*

The SAC alleges that Experian misled Plaintiffs as to Experian's true name by failing to file a "Form 15" with the SEC. *Id.* at 7. As a result, Plaintiffs

"corresponded with Experian at the P.O. Box address provided for this purpose only to have [their] correspondence ignored[.]" *Id.* The SAC does not describe when Plaintiffs communicated with Experian at this address, or the content of their communications.

The SAC further asserts that Plaintiffs hired Lexington Law in February 2014 to write Experian on Plaintiffs' behalf "inquiring and complaining about DSNB MACY'S and BBY/CBNA information shown on [Roseann Manning's] credit report." *Id.* at 8. The SAC does not describe this "DSNB MACY'S and BBY/CBNA information," or explain the basis of Plaintiffs' complaint with it. The SAC does allege, however, that Plaintiffs received no response. *Id.*

According to the SAC, Experian also "made no due diligence effort to ascertain that the [AMEX] claim of $6,441.25 did not just spring from thin air," especially where "[t]here was no credit history or relationship reported." *Id.* According to Plaintiffs, AMEX should have explained its relationship with Roseann Manning and provided some of her credit history, and Experian should not have limited itself to AMEX's reported information. *Id.* at 9. Although later allegations as to other Defendants suggest that Plaintiffs' complaint regarding the AMEX claim is that it was listed as a personal debt of Roseann Manning and not

SECL, *see id.* at 15, the SAC does not assert when Plaintiffs contacted Experian and/or what they disputed with Experian as to this claim.

Finally, the SAC asserts that "much of the negative reporting about the Plaintiffs deals with medical bills associated with their severely handicapped daughter," for which Plaintiffs are not responsible under California law.  *Id.* at 10. Medical providers billed Plaintiffs for this medical care and reported their claims to the CRAs when they did not receive payment.  *Id.* at 10-11.  According to the SAC, "Norman Katz complained to the defendant CRA[s] but received no relief." *Id.* at 11.  These "unfair reporting practices" allegedly caused Norman Katz to "suffer[] in his business because of a lack of financing."  *Id.*  The SAC does not explain whether these medical bills are part of any of the complaints above regarding "DSNB MACY'S and BBY/CBNA information" through Lexington Law and/or the AMEX claim, whether Plaintiffs made these complaints to Experian in particular, and/or when such complaints were made.

> b.     *Equifax*

As to Equifax, the SAC alleges that on or about March 22, 2014, Lexington Law sent a challenge to Equifax regarding two items on Roseann Manning's credit report -- "American Express $6,441.25," and "Pacific Collections/D B."  *Id.* at 12-13.  Equifax has not responded.  *Id.* at 13.

The SAC further alleges that Equifax "participated in the false disclosure about Norman Katz with respect to his liability to pay the patient's share of his daughter's medical costs" as described above for Experian.  *Id.*

### c.   AMEX

As to AMEX, the SAC alleges that AMEX sent Roseann Manning several mailings for her to apply for a Corporate Credit Card for Plaintiffs' business SECL, and that she obtained a card in 1994.  *Id.* at 13.  Because SECL did not have any revenues and no bank account, all payments on this credit card were made through Plaintiffs' personal joint checking account.  *Id.*

In 2010, Plaintiffs applied for a mortgage loan and learned that none of their payments was reported on their credit reports.  *Id.* at 13-14.  Plaintiffs had purchased "almost everything" using this credit card and made timely payments of $5,000 to $12,000 per month for the previous sixteen years, yet they had no positive credit from these payments.  *Id.* at 14.  AMEX never told Plaintiffs that their personal payments would not count as positive credit on their personal credit reports, and never refused to accept these personal payments.  *Id.*  Further, at some point between 1994 and 2010, AMEX issued new cards to replace the Corporate Gold Card where the word "Corporate" was changed to "Business."  *Id.*  Plaintiffs assert that "they never signed a new contract that differentiated between the old

corporate credit card terms and conditions and the new business credit card terms and conditions." *Id.*

AMEX also "recently" reported to the CRAs that Roseann Manning owed AMEX a debt of $6,441.25 as a personal liability. *Id.* at 15. This negative reporting has prevented Roseann Manning from being able to purchase a new automobile even though she would otherwise qualify with the Hawaii State Credit Union. *Id.*

When Norman Katz spoke with AMEX collection personnel about these issues in 2012, AMEX responded that it would not issue a personal card to Plaintiffs and would not correct the credit bureau reports to reflect that Plaintiffs' payments were personal and not corporate. *Id.* at 14. Norman Katz therefore told AMEX that there was no personal liability for SECL's debt unless AMEX "first made a good faith attempt to collect the money from [SECL] and could demonstrate that a separate personal written guarantee was signed by Plaintiffs as required by state law." *Id.* Norman Katz also offered to pay the debt if AMEX "corrected its credit reporting to the credit bureaus." *Id.* at 15. The SAC asserts that "[b]ecause of [AMEX's] fraud in the inducement, Plaintiffs' credit scores were much lower that they otherwise would have been had [AMEX] reported personal payments on the SECL credit card properly." *Id.*

### 2. *"Law and Analysis" Section of SAC*

From the Introduction and factual allegations as to each individual Defendant, it is difficult to discern precisely what claims Plaintiffs are alleging. The SAC does, however, include a "Law and Analysis" section which attempts to outline the legal basis of Plaintiffs' claims.

In particular, the SAC reiterates the facts of CRA Defendants' alleged FCRA violations under 15 U.S.C. § 1681 for failing to timely respond to Plaintiffs' complaints of incorrect information on their credit reports. *Id.* at 15-19. This section further reiterates the Introduction's recitals that CRA Defendants violated FCRA and state libel laws by the CRA Defendants' failing to perform their own due diligence when creditors report negative information. *Id.* at 19. Plaintiffs also mention in passing that CRA Defendants are an oligopoly that violates antitrust law. *Id.* at 20.

As to AMEX in particular, the SAC alleges that AMEX violated FCRA's 15 U.S.C. § 1681s-2 by reporting incorrect information to the CRA Defendants, which it had reasonable cause to believe was incorrect in light of Norman Katz' phone calls to AMEX. *Id.* at 21. The SAC disclaims, however, that it is asserting a claim based on the "chameleon credit card marketing scheme" -- which presumably refers to when AMEX changed the name of the card from a

"corporate" to a "business" credit card.  *Id.* at 24.  Rather, the SAC explains that these facts were included only to show "a pattern of willfulness and disregard for the law."  *Id.*  The SAC does assert, however, that AMEX violated TILA's Regulation Z when it failed "to make full disclosure to Roseann as to the negative impact on their personal credit from using a Corporate Credit card to make their personal purchases," and failed to request any financial information regarding SECL.  *Id.* at 24-25.

Plaintiffs seek damages and restitution in the form of corrected credit reports that reflect their timely credit card payments.  *Id.* at 26.  They also contend that AMEX "should be ordered to accept the balance claimed of $6,441.25 as being made on a timely basis when paid."  *Id.*  Finally, they seek "statutory damages, court costs, and attorney's fees and expenses."  *Id*.

## B.    **Procedural Background**

Plaintiffs filed this action against AMEX on February 19, 2014, Doc. No. 1, and filed an Amended Complaint adding CRA Defendants on March 19, 2014.  Doc. No. 7.  On June 17, 2014, this court dismissed the Amended Complaint with leave to amend as to the CRA Defendants.  Doc. No. 49.  On August 20, 2014, the court dismissed the Amended Complaint with leave to amend as to AMEX.  Doc. No. 66.

On September 19, 2014, Plaintiffs filed their SAC.[2]  Doc. No. 67.

AMEX filed a Motion to Dismiss on October 2, 2014, Doc. No. 68, and Experian

filed a Motion to Dismiss on October 6, 2014, which Equifax substantively joined

with leave of court on November 3, 2014.  Doc. No. 81.  Plaintiffs filed an

Opposition to Experian's Motion on October 20, 2014, Doc. No. 74, and an

Opposition to AMEX's Motion on November 7, 2014.[3]  Doc. No. 82.  Experian

filed a Reply on October 27, 2014, Doc. No. 77, and AMEX filed a Reply on

November 11, 2014.  Doc. No. 83.  A hearing was held on November 17, 2014.

## III.  <u>STANDARDS OF REVIEW</u>

### A.    Pro Se Litigants

Plaintiffs are proceeding *pro se*; consequently, the court liberally

construes their pleadings.  *See Eldridge v. Block,* 832 F.2d 1132, 1137 (9th Cir.

1987) ("The Supreme Court has instructed the federal courts to liberally construe

the 'inartful pleading' of pro se litigants." (citing *Boag v. MacDougall,* 454 U.S.

364, 365 (1982) (per curiam))).  The court also recognizes that "[u]nless it is

---

[2]  Plaintiffs previously filed a second amended complaint on July 18, 2014, which the court struck as premature given that AMEX's Motion to Dismiss was pending at that time.  *See* Doc. Nos. 54, 55.

[3]  On October 14, 2014, Experian filed a "Position Statement" Regarding AMEX's Motion seeking to correct several of AMEX's descriptions of the facts alleged in the SAC.  *See* Doc. No. 73.

absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). The court should not, however, advise a litigant how to cure defects. This type of advice "would undermine district judges' role as impartial decisionmakers." *Pliler v. Ford*, 542 U.S. 225, 231 (2004).

## B.     Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d

1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Iqbal*, 556 U.S. at 679.

## C.    Rule 12(e)

Federal Rule of Civil Procedure 12(e) provides that a party may move for a more definite statement of a pleading where it "is so vague or ambiguous that the party cannot reasonably prepare a response." "Motions for a more definite statement are viewed with disfavor, and are rarely granted." *Cellars v. Pac. Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal. 1999). The proper test for

evaluating a motion under Rule 12(e) is "whether the complaint provides the defendant with a sufficient basis to frame his responsive pleadings." *Id.* "A motion for a more definite statement pursuant to Fed. R. Civ. P. 12(e) attacks the unintelligibility of the complaint, not simply the mere lack of detail, and is only proper when a party is unable to determine how to frame a response to the issues raised by the complaint." *Neveu v. City of Fresno*, 392 F. Supp. 2d 1159, 1169 (E.D. Cal. 2005). "Where the complaint is specific enough to [apprise] the responding party of the substance of the claim being asserted or where the detail sought is otherwise obtainable through discovery, a motion for a more definite statement should be denied." *U.S. E.E.O.C. v. Alia Corp.*, 842 F. Supp. 2d 1243, 1250 (E.D. Cal. 2012).

## IV. <u>ANALYSIS</u>

### A. Experian's Motion to Dismiss

Experian, joined by Equifax, argues that (1) the SAC should be dismissed for failure to comply with Rule 10(b) and/or Plaintiffs be required to file a more definite statement pursuant to Rule 12(e); and (2) Plaintiffs have failed to allege a plausible claim upon which relief can be granted. The court addresses these arguments in turn.

### 1.     Rules 10(b) and 12(e)

Experian and Equifax argue that the SAC should be dismissed for failure to comply with Rule 10(b) and/or that Plaintiffs should be required to file a more definite statement pursuant to Rule 12(e).

The court agrees that the SAC fails to comply with Rule 10(b) and the court's previous instructions.  Like the SAC, Plaintiffs' Amended Complaint provided a long narrative in paragraph form, and the August 20, 2014 Order provided clear instructions for Plaintiffs to file a SAC.  In particular, the August 20, 2014 Order explained that "Plaintiffs may include only one claim per count, and must comply with Federal Rule of Civil Procedure 10(b)," which provides:

> A party must state its claims or defenses in numbered
> paragraphs, each limited as far as practicable to a single
> set of circumstances. . . .  If doing so would promote
> clarity, each claim founded on a separate transaction or
> occurrence -- and each defense other than a denial --
> must be stated in a separate count or defense.

Plaintiffs did not follow these instructions in filing their SAC -- the SAC presents a long narrative divided by sections entitled "Introduction," "Facts" (with subsections for each Defendant), "Law and Analysis," and "Conclusion."  In other words, the SAC is more akin to a legal brief than a complaint which should contain each allegation in a single numbered paragraph and with a clear statement

as to the factual basis of each claim against each Defendant.  Following Rule 10(b) and the court's instructions may very well have prevented what happened with Plaintiffs' SAC -- in the "Introduction" and "Law and Analysis" sections Plaintiffs introduce various legal concepts law without ever linking them to any particular facts (*e.g.*, the SAC asserts that Plaintiffs' due process rights were violated, but fails to explain how any Defendant could be subject to a due process claim or what any particular Defendant did that is the basis of such claim).  Further, as even Plaintiffs recognize in their Opposition, the SAC includes a number of allegations that are irrelevant to their claims.  *See, e.g.*, Doc. No. 74, Pls.' Opp'n at 10 ("The matters dealing with Plaintiffs' daughter are irrelevant and only an expression of Plaintiffs' past exasperation with respect to communicating and complaining to CRA's.  These old complaints are not claims in this action.").  Needless to say, including superfluous allegations only makes discerning the true basis of Plaintiffs' claims that much more difficult.

Despite Plaintiffs' failure to comply with this court's previous instructions and/or Rule 10(b), the court declines to dismiss it on this basis. Plaintiffs are appearing pro se, and the court accepts their assertions of naivety and/or lack of understanding of the proper form for pleadings.  *See, e.g.*, *id.* at 8 ("Any failure in form is due to the Plaintiffs' lack of legal training and not

intention to ignore the Court's instruction.").  Further, responding to the SAC in its current form is not too onerous -- indeed, its format did not prevent Trans Union from filing an Answer.  *See* Doc. No. 71.

The court also rejects Experian's and Equifax's request for a more definite statement pursuant to Rule 12(e).  The SAC is specific enough to apprise them of the substance of Plaintiffs' claims to form a response.

The court therefore DENIES Experian's Motion to Dismiss for failure to comply with Rule 10(b) and/or for a more definite statement pursuant to Rule 10(e).  As explained below, however, the court dismisses the SAC as to Experian and in part as to Equifax, and provides further instructions for Plaintiffs to file a Third Amended Complaint, if they so choose.

## 2.    *Motion to Dismiss for Failure to State a Claim*

The SAC refers generally to a number of possible federal claims as to Experian and Equifax, including violations of FCRA, antitrust law, and due process, and state law claims for libel and/or fraud.  The SAC, however, does not include any specific allegations as to Experian or Equifax that would form the basis of a claim for violations of antitrust laws, due process, or for libel and/or fraud.  Rather, the specific facts alleged in the SAC as to these Defendants are directed to violations of FCRA.  As a result, to the extent the SAC attempts to

assert claims for violations of antitrust laws, due process, or for libel and/or fraud,

they are dismissed for failure to allege a plausible claim for relief.  The court

therefore turns to Plaintiffs' FCRA claims as to Experian and Equifax.

      *a.*    *FCRA Framework as to CRA Defendants*

Like the FAC, the SAC appears to allege a violation of 15 U.S.C.

§ 1681i(a)(1)(A), which provides in relevant part:

> [I]f the completeness or accuracy of any item of
> information contained in a consumer's file at a consumer
> reporting agency is disputed by the consumer and the
> consumer notifies the agency directly, or indirectly
> through a reseller, of such dispute, the agency shall, free
> of charge, conduct a reasonable reinvestigation to
> determine whether the disputed information is inaccurate
> and record the current status of the disputed information,
> or delete the item from the file in accordance . . . before
> the end of the 30-day period beginning on the date on
> which the agency receives the notice of the dispute from
> the consumer or reseller.

As outlined in the June 17, 2014 Order, a § 1681i(a)(1)(A) claim

includes the following elements:

> (i) the plaintiff's credit report contains inaccurate or
> incomplete information; (ii) the plaintiff notified the
> consumer reporting agency directly[4] of the inaccurate or
> incomplete information; (iii) the plaintiff's dispute is not

---

[4]  Because Plaintiffs do not allege that they notified any CRA Defendant of incorrect credit information indirectly through a reseller, the court outlines the relevant FCRA elements where a consumer notifies a CRA directly.

frivolous or irrelevant; (iv) the consumer reporting
agency failed to respond to the plaintiff's dispute; (v) the
failure to reinvestigate caused the consumer to suffer
damages; and (vi) actual damages resulted to the
plaintiff.  Actual damages may include damages for
humiliation, mental distress, and injury to reputation and
creditworthiness, even if the plaintiff has suffered no
out-of-pocket losses.

*Katz*, 2014 WL 2738528, at *3 (citing *Thomas v. Trans Union, LLC*, 197 F. Supp.

2d 1233, 1236 (D. Or. 2002)); *see also Darrin v. Bank of Am., N.A.*, 2014 WL

1922819, at *7 (E.D. Cal. May 14, 2014); *Baker v. Trans Union LLC*, 2008 WL

4838714, at *6 (D. Ariz. Nov. 6, 2008); *Saenz v. Trans Union*, LLC, 621 F. Supp.

2d 1074, 1082 (D. Or. 2007); *Acton v. Bank One Corp.*, 293 F. Supp. 2d 1092,

1098 (D. Ariz. 2003).

        As the language of § 1681i(a)(1)(A) suggests, absent a complaint by

the consumer, FCRA does not impose on CRAs an affirmative duty to investigate

a consumer's credit history.  Rather, "[p]rior to being notified by a consumer, a

credit reporting agency generally has no duty to reinvestigate credit information."

*Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 474 (2d Cir. 1995).  *See also*

*Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) ("With

respect to the accuracy of disputed information, the CRA is a third party, lacking

any direct relationship with the consumer, and its responsibility is to '*re*

investigate' a matter once already investigated in the first place." (quoting *Gorman*

*v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156-57 (9th Cir. 2009))).

        *b.*    *Application -- Experian*

        The SAC includes a number of different allegations against Experian,

and Plaintiffs concede that some of these allegations are not the basis of any claim.

Specifically, the SAC alleges that (1) CRA Defendants have included on

Plaintiffs' credit reports "negative reporting" concerning medical bills, and that

"Norman Katz complained to the defendant CRA's but received no relief." Doc.

No. 67, SAC at 11; and (2) Experien misled Plaintiffs as to Experian's true name

by failing to file a "Form 15" with the SEC. *Id.* at 7. In their Opposition,

Plaintiffs disclaim that these allegations are a part of their claims. *See* Doc. No.

74, Pls.' Opp'n at 9, 10-11. The court therefore focuses on the remaining

allegations of FCRA violations, which are too conclusory to allege a plausible

violation of FCRA.

        In particular, nowhere in the SAC do Plaintiffs provide a complete

story of their interactions with Experian, which would include, for example, when

Plaintiffs learned that their credit report was incorrect; the particular information

in their credit report that was incorrect and why Plaintiffs assert such information

is incorrect; when Plaintiffs contacted Experian; and the content of their

20

correspondence with Experian and Experian's response, if any. Instead, Plaintiffs make a number of vague allegations that Experian did not respond to Plaintiffs, and expect Defendants and the court to fill in the blanks.

For example, the SAC alleges that they hired Lexington Law in February 2014 to write Experian on Plaintiffs' behalf "inquiring and complaining about DSNB MACY'S and BBY/CBNA information shown on [Roseann Manning's] credit report," and that Plaintiffs received no response. *Id.* at 8. Plaintiffs fail to allege, however, whether and/or how the "DSNB MACY'S and BBY/CBNA information" shown on Roseann Manning's credit report was inaccurate and/or incomplete, and how the inclusion of this information on her credit report caused her injury. The SAC also alleges that Experian "made no due diligence effort to ascertain that the American Express claim of $6,441.25 did not just spring from thin air," especially where "[t]here was no credit history or relationship reported." *Id.* The SAC fails to explain whether, when, and how they contacted Experian to dispute this information, and/or any response by Experian. And although Plaintiffs assert that "[i]t is clearly implied here that Plaintiffs' direct correspondence disputed the American Express claim," Doc. No. 74, Pls.' Opp'n at 6, Plaintiffs must still describe this correspondence and its content to clarify the basis of this claim. Indeed, it is unclear whether Plaintiffs raised the

AMEX claim separately with Experian, or whether this was part of the dispute Lexington Law raised on behalf of Plaintiffs.

Finally, to the extent the SAC attempts to allege a FCRA violation based on Experian's failure to independently investigate Plaintiffs' credit history when it received the negative information from creditors (as opposed to when Plaintiffs notified Experian of the dispute), the court rejects such claim. Based on the plain language of FCRA, Experian's duty to perform any investigation was not triggered until after Plaintiffs notified Experian of their dispute. *See Carvalho*, 629 F.3d at 892.

The court therefore GRANTS Experian's Motion to Dismiss the SAC, with leave for Plaintiffs to amend as to their FCRA claims against Experian based on their complaints regarding (1) the "DSNB MACY'S" information; (2) the "BBY/CBNA" information, and (3) the AMEX claim for $6,441.25.

    *c.*    *Application -- Equifax*

As to Equifax, the SAC alleges that Equifax failed to respond to a March 22, 2014 letter challenging two items on Roseann Manning's credit report

-- "American Express $6,441.25," and "Pacific Collections/D B."  Doc. No. 67, SAC at 12-13.[5]  Equifax argues that these allegations fail to allege a plausible claim for relief because they fail to "allege what was inaccurate about these accounts or that they were inaccurate in any way."  Doc. No. 81, Equifax Joinder at 3.  The court agrees with Equifax only in part.

As an initial matter, to the extent Plaintiffs base their claim on the assertion that Equifax should have performed some independent analysis of Plaintiffs' credit history before Plaintiffs notified it of any problems, the court rejects such claim for the same reasons explained above for Experian -- FCRA does not impose such duty on CRAs.  Rather, a CRA's duty is to *respond* to a consumer complaint that information in the credit report is incorrect.

Further, as to Plaintiffs' "challenge" to "Pacific Collections/D B," the only allegations describing this "challenge" are that Lexington Law sent a letter to Equifax on March 22, 2014, and that Equifax did not respond.  Doc. No. 67, SAC at 12- 13.  These allegations are insufficient to allege a plausible FCRA claim -- the SAC fails to describe what "Pacific Collections/D B" refers to, the particular

_____

[5] The SAC also alleges that Equifax "participated in the false disclosure about Norman Katz with respect to his liability to pay the patient's share of his daughter's medical costs" as described above for Experian.  Doc. No. 67, SAC at 13.  In light of Plaintiffs' concession that they are not asserting a claim based on these facts, the court does not consider them as part of Plaintiffs' claims against Equifax.

information in Plaintiffs' credit report regarding Pacific Collections/D B that was incorrect, and why Plaintiffs assert such information is incorrect.

The court finds, however, that Plaintiffs have alleged sufficient facts regarding their "challenge" regarding the "American Express $6,441.25" to allege a plausible violation of FCRA. In particular, the SAC alleges that Plaintiffs dispute this claim because the debt should not be attributed to Roseann Manning in her individual capacity, but rather is a debt of Plaintiffs' company SECL. *See* Doc. No. 67, SAC at 15. The SAC further alleges the date when Lexington Law raised this challenge with Equifax (March 22, 2014), and that Equifax failed to provide any response. *Id.* at 13. Thus, contrary to Equifax's protestations and viewing these allegations liberally in favor of pro se Plaintiffs, the SAC alleges the basis of their assertion that the AMEX charge is inaccurate, the date they notified Equifax of their challenge, and that Equifax failed to respond. The SAC further asserts that as a result of this "false report," Roseann Manning was denied financing on a new car, and Plaintiffs were given unfavorable mortgage terms. *Id.* at 18-19.

The court therefore GRANTS in part and DENIES in part Equifax's substantive joinder. Plaintiffs' FCRA claim against Equifax based on its alleged failure to respond to Plaintiffs' complaint regarding the AMEX charge for

$6,441.25 remains.  Plaintiffs are granted leave to amend their FCRA claim

against Equifax as to the their complaint regarding "Pacific Collections/D B."

**B.     AMEX**

As stated above as to Experian and Equifax, although the SAC refers

to violations of various laws, the only specific allegations as to AMEX appear

directed to claims for violations of FCRA and TILA.  Thus, to the extent Plaintiffs

are attempting to assert any claims beyond those for violations of FCRA and

TILA, the court dismisses them.  As to Plaintiffs' FCRA and TILA claims, AMEX

argues that Plaintiffs have failed to allege a plausible claim upon which relief may

be granted.  Based on the following, the court agrees.

*1.     FCRA*

AMEX argues, among other things, that Plaintiffs have failed to

allege the basic elements of a violation of 15 U.S.C. § 1681s-2(b).[6]  The court

agrees.

As the August 20, 2014 Order previously outlined, a plaintiff may

assert a claim for violation of  § 1681s-2(b)(1)[7] against a furnisher of credit

---

[6] AMEX also argues that this claim is barred by the statute of limitations.  Because the
court finds that Plaintiffs have failed to allege a plausible claim and that granting leave to amend
would be futile as to such FCRA claim, the court need not address this additional argument.

[7] The court construes the SAC as asserting a violation of 15 U.S.C. § 1681s-2(b) only.

(continued...)

information for failure to investigate a credit dispute, but this duty to investigate is triggered only after the furnisher receives notice of such a dispute from the CRA. *See Katz*, 2014 WL 4180936, at *5; *Gorman*, 584 F.3d at 1154 ("These duties arise only after the furnisher receives notice of dispute from a CRA."). Thus, a direct complaint from the consumer to the furnisher does not trigger any duty to investigate under FCRA. *See, e.g.*, *Drew v. Equifax Info. Servs.*, 690 F.3d 1100,

---

[7](...continued)
Subsection 1681s-2(b)(1) provides "Duties of furnishers of information upon notice of dispute" as follows:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--
> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly --
> (i) modify that item of information;
> (ii) delete that item of information; or
> (iii) permanently block the reporting of that item of information.

1106 (9th Cir. 2012) ("[Plaintiff's] direct complaint to [the furnisher] . . . would not have triggered any duty since it was unaccompanied by CRA notification."). Rather, "[i]t is only after (1) a consumer has notified a [CRA] of an inaccuracy, (2) the [CRA] has notified the furnisher, and (3) the furnisher has failed to take action, that a consumer may sue the furnisher." *Amina v. WMC Mortg. Corp.*, 2011 WL 1869835, at *11 (D. Haw. May 16, 2011) (quoting *Diana I Am v.. Nat'l City Mortg. Co.*, 2010 WL 571936, at *10 (D. Haw. Feb. 17, 2010)).

The SAC alleges that Plaintiffs communicated directly with AMEX, and includes no allegations that any of the CRA Defendants notified AMEX that Plaintiffs had challenged the AMEX charge, which would trigger AMEX's duty to investigate under FCRA. And although Plaintiffs assert, both in their Opposition and at the November 17, 2014 hearing, that discovery is needed "for Plaintiffs to flesh out their impressions and beliefs," Doc. No. 82, Pls.' Opp'n at 5, the SAC includes no allegations leading to a plausible conclusion that any CRA Defendant contacted AMEX to report that Plaintiffs disputed the AMEX charge.[8] Without

---

[8] To the extent Plaintiffs argue that discovery is necessary for them to learn sufficient facts to support their claims, such request is denied. "The Supreme Court has stated . . . that plaintiffs must satisfy the pleading requirements of Rule 8 before the discovery stage, not after it." *Mujica v. AirScan Inc.*, --- F.3d ----, 2014 WL 5839817, at *9 (9th Cir. Nov. 12, 2014) (citing *Iqbal*, 556 U.S. at 678-79 (explaining that Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions") (emphasis omitted).

such allegations, Plaintiffs have failed to allege a plausible violation of § 1681s-2(b).

At the November 17, 2014 hearing, Norman Katz conceded that Plaintiffs were unaware whether any of the CRA Defendants notified AMEX that Plaintiffs had challenged the AMEX charge. Instead, Norman Katz asserted that their FCRA claim is based on the facts that (1) AMEX reported to CRA Defendants the $6,441.25 charge as a personal debt of Roseann Manning even though it was based on the SECL's credit card debt, (2) Roseann Manning is not a guarantor of SECL, and (3) AMEX refused to correct this information despite numerous phone calls from Norman Katz. Norman Katz further asserted that these facts state a claim for violation of 15 U.S.C. § 1681s-2(a) requiring "furnishers" of information (such as AMEX) to provide accurate information to CRAs, and that Plaintiffs may assert such claim for negligent violations of FCRA pursuant to 15 U.S.C. § 1681o, and willfully negligent violations pursuant to 15 U.S.C. § 1681n. The court rejects this argument.

The August 20, 2014 Order already dismissed Plaintiffs' claim alleging a violation of 15 U.S.C. § 1681s-2(a) with prejudice because "FCRA expressly precludes a private cause of action to enforce violations of § 1681s-2(a)." *See Katz*, 2014 WL 4180936, at *4 (citing *Gorman*, 584 F.3d at 1154

28

("Duties imposed on furnishers under subsection (a) are enforceable only by federal or state agencies."); *Nelson v. Chase Manhattan Mortg. Corp*., 282 F.3d 1057, 1060 (9th Cir. 2002) (noting that "Congress limited the enforcement of the duties imposed by § 1681s-2(a) to governmental bodies")).  The August 20, 2014 Order further explained that although FCRA expressly creates a private cause of action for willful or negligence noncompliance through 15 U.S.C. § 1681o and 15 U.S.C. § 1681n, "§ 1681s-2 limits this private right of action to claims arising under [§ 1681s-2(b)], the duties triggered upon notice of a dispute from a CRA." *Id*. (citing *Gorman*, 584 F.3d at 1154).  Thus, Plaintiffs' assertions that AMEX willfully reported the debt as a personal liability of Roseann Manning, without any allegations that AMEX received notice from a CRA, fail to allege a cognizable violation of the FCRA.  Simply put, Plaintiffs cannot assert a FCRA violation where no CRA gave AMEX notice of a dispute as required by § 1681s-2(b)(1).

The court therefore GRANTS AMEX's Motion to Dismiss Plaintiffs' FCRA claim.  Because amendment of a FCRA claim would be futile, the court dismisses this claim without leave to amend as to the FCRA claim.  The court does, however, grant Plaintiffs one more opportunity to determine whether they may assert another claim against AMEX -- whether based on a violation of another federal law or state law -- based on these facts.  And to the extent that Plaintiffs

base any such claim on allegations of fraud, a higher pleading standard applies --

Plaintiffs must allege "particularized allegations of the circumstances *constituting*

fraud," by alleging specific facts establishing the time, place, and nature of the

alleged fraud. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir.

1994) (en banc) (emphasis in original), superseded on other grounds by 15 U.S.C.

§ 78u-4.

### 2.    *TILA*

AMEX argues that Plaintiffs' TILA claim fails because they allege

that the AMEX credit card was issued to their business, SECL, and not to either

(or both) of the Plaintiffs as individuals. *See* Doc. No. 67, SAC at 13 ("The

American Express written inducement offered a means for creating credit for a

newly formed corporation, SECL."). These same allegations were in the Amended

Complaint, and for the same reasons outlined in the August 20, 2014 Order, the

court finds that Plaintiffs have failed to allege a plausible TILA claim.

As the August 20, 2014 Order explains, *see Katz*, 2014 WL at

4180936, at *6, by its terms, TILA does not apply to "[c]redit transactions

involving *extensions of credit primarily for business*, commercial, or agricultural

purposes, or . . . *to organizations*." 15 U.S.C. § 1603(1) (emphases added).

Corporations are included in the definition of "organization," 15 U.S.C.

§ 1602(d), meaning that TILA does not apply to credit transactions involving corporations.  Rather, TILA was enacted "to assure a meaningful disclosure of credit terms so that the *consumer* will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the *consumer* against inaccurate and unfair credit billing and credit card practices."  15 U.S.C. § 1601(a) (emphases added).  Under TILA:

> The adjective "consumer", used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money . . . which [is] the subject of the transaction [is] primarily for personal, family, or household purposes.

15 U.S.C. § 1602(i).

Thus, two elements must be present for a credit transaction to qualify for TILA protection -- (1) "the party to whom the credit is extended must be a natural person," and (2) "the money, property or services received by that person must be 'primarily for personal, family, [or] household . . . purposes.'"  *Am. Express Co. v. Koerner*, 452 U.S. 233, 241 (1981); *see also Prifti v. PNC Bank, N.A.*, 2001 WL 1198653, at *3 (E.D. Pa. Oct. 9, 2001) (outlining elements of TILA claim); *Samadi v. Bank of Am., N.A.*, 2010 WL 3894448, at *6 (S.D. Ga. Sept. 30, 2010) (same).  "[T]he first inquiry under the TILA focuses on to whom

the credit was extended," while the second inquiry focuses on the purpose of the transaction. *Prifti*, 2001 WL 1198653, at *3.

Plaintiffs fail to allege either of these necessary elements of their TILA claim. As an initial matter, it appears that the purpose of the credit card was for Plaintiffs' business and not for personal expenses. The SAC alleges that the credit card at issue was a "corporate" or "business" credit card issued to SECL, Plaintiffs' business, *see* Doc. No. 67, SAC at 2, 7, and that this corporate credit card was "a means for creating credit for" this company. *Id.* at 13. The SAC further alleges that "Norman Katz, Roseann's husband, was the CEO of the corporation and Roseann was the CFO." *Id.* Thus, a fair reading of the SAC indicates that the credit card was not "consumer credit" for purposes of TILA. *See, e.g.*, *Koerner*, 452 U.S. at 243-44 (holding that TILA does not apply where "[t]he undisputed facts of this case reveal that the [cardholder] obtained the right 'to incur debt and defer its payment' from American Express primarily for business, not consumer, purposes"); *Prifti*, 2001 WL 1198653, at *3 (dismissing TILA claim where plaintiffs conceded that credit was extended to corporation and not directly to plaintiffs, even though plaintiffs used unsecured credit line primarily for personal purposes); *Eze v. JP Morgan Chase Bank, NA*, 2010 WL 3189813, at *6 (E.D.N.Y. Aug. 11, 2010) ("TILA pertains solely to the extension

of consumer credit. It is, however, undisputed that the credit card at issue here was a business, and not a consumer, credit card, meaning that TILA is inapplicable.").

More glaring, however, is that the credit card at issue was not issued to Plaintiffs as individuals (or, in the statutory term, "a natural person"), but to their business SECL. Indeed, at the November 17, 2014 hearing, Norman Katz conceded that the credit card issued to SECL as a business entity and not to either Plaintiff individually. As a result, the SAC does not allege, and Plaintiffs cannot amend to allege facts establishing, that AMEX extended credit to any "natural person." TILA does not apply.

The court therefore GRANTS AMEX's Motion to Dismiss Plaintiffs' TILA claim. Because Plaintiffs cannot allege facts that this credit card issued to a natural person, this dismissal is without leave to amend this TILA claim.

## C. Leave to Amend

The court has already dismissed Plaintiffs' Amended Complaint in lengthy orders explaining its deficiencies, and in their SAC, Plaintiffs have failed to allege sufficient facts to overcome many of the same deficiencies. Plaintiffs are, however, appearing pro se and the Federal Rules of Civil Procedure contemplate that leave to amend "shall be freely given when justice so requires,"

and that "[t]his policy is 'to be applied with extreme liberality.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations omitted). Although the court has significant doubts that Plaintiffs will be able to file a Third Amended Complaint addressing the problems above, the court will nonetheless provide Plaintiffs one more opportunity to allege a plausible claim for relief by filing a Third Amended Complaint as outlined above by December 16, 2014.

       If Plaintiffs choose to file a Third Amended Complaint, Plaintiffs are again instructed to clearly state how each named Defendant has injured them. In other words, Plaintiffs should explain, in clear and concise allegations, what each Defendant did and how those specific facts create a plausible claim for relief, considering Federal Rule of Civil Procedure 8(a). In other words, to provide proper notice, a Third Amended Complaint should allege necessary facts against specific Defendants, *i.e.*, tie each claim to a Defendant or specific Defendants and explain how each Defendant is liable. A Third Amended Complaint must avoid alleging a particular violation against all Defendants without specifying what acts were committed by each Defendant. Plaintiffs should also include only those facts relevant to their claims, *i.e.*, they should not include facts which are not a basis of their claims, such as Plaintiffs' allegations regarding medical bills.

A Third Amended Complaint will supersede the prior pleadings and must be complete in itself without reference to prior superseded pleadings. *E.g.*, *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled in part by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012) (en banc). Plaintiffs may include only one claim per count, and must comply with Federal Rule of Civil Procedure 10(b), requiring a party to state "its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Should Plaintiffs choose to file a Third Amended Complaint, they must write short, plain statements telling the court: (1) the statutory right they believe was violated; (2) the specific basis of this court's jurisdiction; (3) the name of the defendant who violated that right; (4) exactly what that defendant did or failed to do; (5) how the action or inaction of that defendant is connected to the violation of Plaintiffs' rights; and (6) what specific injury Plaintiffs suffered because of that defendant's conduct. A Third Amended Complaint should be presented in paragraph form, with each paragraph including a single fact and/or allegation to which a defendant may respond.

Plaintiffs must clearly designate on the face of the document that it is the "Third Amended Complaint." Again, the Third Amended Complaint may not incorporate any part of the original Complaint, Amended Complaint, or SAC by

reference, but rather, any specific allegations must be restated or rewritten in their entirety. Any cause of action not already dismissed with prejudice that is not raised in the Second Amended Complaint is waived.[9] *King*, 814 F.2d at 567.

If Plaintiffs choose not to file a Third Amended Complaint by December 16, 2014, this action will proceed on Plaintiffs' FCRA claim against Transunion and Equifax (to the extent based on Equifax's failure to respond to Plaintiffs' complaint regarding the AMEX charge).

## V. CONCLUSION

Based on the above, the court: (1) GRANTS Defendant Experian Information Solutions, Inc.'s Motion to Dismiss "Final Amended Complaint," Doc. No. 70; (2) GRANTS in Part and DENIES in Part Defendant Equifax, Inc.'s Substantive Joinder in Defendant Experian Information Solutions, Inc.'s Motion to Dismiss; Doc. No. 81; and (3) GRANTS Defendant American Express Travel Related Service's Motion to Dismiss "Final Amended Complaint," Doc. No. 68. Plaintiffs are granted leave to file a Third Amended Complaint by December 16, 2014. If Plaintiffs choose not to file a Third Amended Complaint by December

---

[9] Claims that were dismissed *without* leave to amend need not be pleaded again in an amended complaint to preserve them for appeal. *See Lacey*, 693 F.3d at 928. However, "claims that have been dismissed with leave to amend and are not repled in the amended complaint will be considered waived." *Id.*

16, 2014, this action will proceed on Plaintiffs' FCRA claim against Transunion and Equifax (to the extent based on Equifax's failure to respond to Plaintiffs' complaint regarding the AMEX charge).

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 18, 2014.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Katz v. Am. Express Co., et al.*, Civ. No. 14-00084 JMS-RLP, Order (1) Granting Defendant Experian Information Solutions, Inc.'s Motion to Dismiss "Final Amended Complaint," Doc. No. 70; (2) Granting in Part and Denying in Part Defendant Equifax, Inc.'s Substantive Joinder in Defendant Experian Information Solutions, Inc.'s Motion to Dismiss; Doc. No. 81; and (3) Granting Defendant American Express Travel Related Service's Motion to Dismiss "Final Amended Complaint," Doc. No. 68