IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| NORMAN KATZ AND ROSEANN MANNING (FORMERLY KATZ), <br><br> Plaintiffs, <br><br> vs. <br><br> AMERICAN EXPRESS COMPANY, EXPERIAN CORP., EQUIFAX, INC., and TRANS UNION CORP. <br><br> Defendants. | CIV. NO. 14-00084 JMS-RLP <br><br> ORDER GRANTING DEFENDANT AMERICAN EXPRESS TRAVEL RELATED SERVICE'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT, DOC. NO. 91 |

**ORDER GRANTING DEFENDANT AMERICAN EXPRESS TRAVEL RELATED SERVICE'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT, DOC. NO. 91**

**I. INTRODUCTION**

Pro se Plaintiffs Norman Katz ("Katz") and Roseann Manning's (f/k/a Roseann Katz) ("Manning") (collectively "Plaintiffs") Third Amended Complaint ("TAC") marks their latest attempt to allege plausible violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et. seq.*, and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1602, *et seq.*, by American Express Company ("AMEX"),[1]

---

[1] AMEX asserts that its name is "American Express Travel Related Services."

Experian Corp. ("Experian"), Equifax, Inc. ("Equifax"), and Trans Union Corp. ("Trans Union") (collectively "Defendants").

The court has already dismissed Plaintiffs' claims against AMEX in two separate Orders, and AMEX argues in its Motion to Dismiss that the TAC fails to correct the deficiencies of Plaintiffs' previous pleadings and fails to state a plausible claim upon which relief can be granted. Doc. No. 91. Based on the following, the court agrees and GRANTS AMEX's Motion to Dismiss. And because the court has already provided Plaintiffs with two attempts to amend their pleading, and because granting leave to amend yet another time would be futile, this dismissal as to AMEX is without leave to amend.

## II. BACKGROUND

**A.　Factual Background**

Plaintiffs' dispute with AMEX stems from a credit card they obtained for their business, Second Equity Concepts Ltd. ("SECL").[2] As alleged in the TAC, Manning originally had a personal AMEX credit card, but decided to convert it to a corporate credit card in the name of SEQL in May 1991, after receiving several unrequested solicitations for a Gold Corporate Credit Card from

---

[2] Although the TAC includes additional allegations against Experian, Equifax, and Trans Union, the court focuses on only those facts relevant to AMEX's Motion to Dismiss.

AMEX. Doc. No. 89, TAC ¶ 6, at p. 2.[3] Plaintiffs believed that by obtaining a credit card for SEQL, they would establish credit for SEQL and would not be personally liable for its debts. *Id.* at p. 3. Plaintiffs assert, however, that AMEX nonetheless treated this credit card as issued to Manning personally because the original contract named Manning as a principal to the credit contract, AMEX asked no questions about the SEQL's assets and liabilities, and AMEX apparently relied on Plaintiffs' timely joint payments to Manning's personal credit card as a basis for issuing SEQL the credit card. *Id.* In issuing the corporate credit card, AMEX did not make certain disclosures required by TILA for consumer credit lines, and did not disclose "the potential loss of personal credit." *Id.*

Sometime between January 20, 2002 and February 19, 2002, the name appearing on the AMEX statements changed from "The Gold Corporate Card for Small Business" to "Business Gold Card," which Katz believed reflected that this card was a personal, not business credit card because SEQL never had a bank account and all payments were from Plaintiffs' joint personal bank account. *Id.* at p. 2-3. In 2010, however, Plaintiffs learned that their payment history with AMEX did not appear on their personal credit reports. *Id.* at 4. As a result, Plaintiffs

---

[3] Because paragraph six of the TAC spans 4 pages, the court cites to both the paragraph and page number.

decided not to pay corporate business trip expenditures on their card (totaling $6,441.25) until AMEX corrected this issue. *Id.*

In 2012, Katz had several phone conversations with AMEX employees, but they were unable to resolve their dispute. *Id.* During later settlement discussions, AMEX told Katz that their contract adopted Utah law by reference, which allows AMEX to send terms and conditions in small print, with any subsequent use of the card acting as the cardholder's signature on the contract. *Id.* at 3. Although the TAC does not identify any terms of their contract with AMEX that were allegedly changed through this process, it asserts that "[t]his may be a Constitutional issue," and [i]t is no wonder that experienced and sophisticated CPA's as the Plaintiffs [] can be sucked into such a fraudulent scheme." *Id.* at 4.

Finally, the TAC asserts that due to Katz' phone conversations with AMEX, AMEX had reasonable cause to believe that the information it supplied to the credit reporting agency Defendants Experian, Equifax, and Trans Union (collectively, "CRA Defendants") regarding Plaintiffs' failure to pay the $6,441.25 was in error. *Id.* ¶ 7, at 5. Plaintiffs assert that AMEX violated the FCRA by reporting this claim without explaining AMEX's relationship with SEQL or Plaintiff's credit history. *Id.*

4

B.     **Procedural Background**

Plaintiffs filed this action against AMEX on February 19, 2014, Doc. No. 1, and filed an Amended Complaint adding CRA Defendants on March 19, 2014. Doc. No. 7. On June 17, 2014, the court dismissed the Amended Complaint with leave to amend as to the CRA Defendants. Doc. No. 49, 2014 WL 2738528 (D. Haw. June 17, 2014). On August 20, 2014, the court dismissed the Amended Complaint with leave to amend as to AMEX. Doc. No. 66, 2014 WL 4180936 (D. Haw. Aug. 20, 2014). In particular, the August 20, 2014 Order dismissed Plaintiffs' claim against AMEX for violation of FCRA's 15 U.S.C. § 1681s-2(a) with prejudice, and dismissed Plaintiffs' claims against AMEX for violations of FCRA's 15 U.S.C. § 1681s-2(b) and TILA with leave to amend.

On September 19, 2014, Plaintiffs filed their SAC.[4] Doc. No. 67. On November 18, 2014, the court granted AMEX's Motion to Dismiss.[5] Doc. No. 86, 2014 WL 6470595 (D. Haw. Nov. 18, 2014). The November 18, 2014 Order once again dismissed Plaintiffs' FCRA and TILA claims, this time without leave to amend as to these claims. *Id.*, 2014 WL 6470595, at *11-13. The court did,

---

[4] Plaintiffs previously filed a second amended complaint on July 18, 2014, which the court struck as premature given that AMEX's Motion to Dismiss was pending at that time. *See* Doc. Nos. 54, 55.

[5] The November 18, 2014 Order also granted Experian's Motion to Dismiss, and granted in part and denied in part Equifax's Substantive Joinder in Experian's Motion.

however, grant Plaintiffs one more opportunity to determine whether they could assert a different claim against AMEX, whether based on a violation of another federal or state law. *Id.* at *11.

On January 16, 2015, Plaintiffs filed their TAC, alleging claims titled (1) AMEX Violation of TILA 15 U.S.C. § 1602 *et. seq.*, (2) AMEX Violation of Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681s-2; (3) CRA Violation of FCRA 15 U.S.C. § 1681(A)(1)(A); and (4) Defendants Negligent and Willful Non-Compliance with the FCRA Under 15 U.S.C. § 1681o and 1681n. On January 29, 2015, AMEX filed its Motion to Dismiss. Doc. No. 91. Plaintiffs filed an Opposition on February 5, 2015, Doc. No. 99, and AMEX filed a Reply on February 10, 2015. Doc. No. 104. Pursuant to Local Rule 7.2(d), the court determines AMEX's Motion without a hearing.

### III. STANDARDS OF REVIEW

**A.     Pro Se Litigants**

Plaintiffs are proceeding *pro se*; consequently, the court liberally construes their pleadings. *See Eldridge v. Block,* 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants." (citing *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam))). The court also recognizes that "[u]nless it is

6

absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). The court should not, however, advise a litigant how to cure defects. This type of advice "would undermine district judges' role as impartial decisionmakers." *Pliler v. Ford*, 542 U.S. 225, 231 (2004).

**B.     Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d

7

1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Iqbal*, 556 U.S. at 679.

## IV. ANALYSIS

### A. AMEX's Motion to Dismiss

The court has already given Plaintiffs two opportunities to assert plausible claims for relief against AMEX, and Plaintiffs have once again failed to do so in their TAC.

8

Liberally construing the TAC, Plaintiffs appear to assert claims against AMEX for violation of TILA and FCRA. In alleging these claims, Plaintiffs ignore that the November 18, 2014 Order dismissed Plaintiffs' previous TILA and FCRA claims *with prejudice*, and limited Plaintiffs to asserting a *different* claim, *i.e.*, a claim based on a different law. In particular, the November 18, 2014 Order explained that although Plaintiffs were not granted leave to amend their TILA and FCRA claims, the court granted Plaintiffs

> one more opportunity to determine whether they may assert another claim against AMEX -- whether based on a violation of another federal law or state law -- based on these facts. And to the extent that Plaintiffs base any such claim on allegations of fraud, a higher pleading standard applies -- Plaintiffs must allege "particularized allegations of the circumstances constituting fraud," by alleging specific facts establishing the time, place, and nature of the alleged fraud.

Doc. No. 86, 2014 WL 6470595, at *11 (citations and emphasis omitted). Plaintiffs' claims against AMEX, based solely on TILA and FCRA violations, fail on this basis alone.

Further, even if the court considers the substance of Plaintiffs' TILA and FCRA claims, Plaintiffs still fail to allege plausible TILA and/or FCRA claims for all the same reasons explained in the August 20, 2014 and November 18, 2014 Orders. Plaintiffs' TILA claim fails because TILA does not apply to credit

9

transactions involving corporations. *See* Doc. No. 86, 2014 WL 6470595, at *12 (explaining that TILA does not apply to "[c]redit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes, or . . . to organizations" (quoting 15 U.S.C. § 1603(1)) (emphasis omitted)); *see also* Doc. No. 66, 2014 WL at 4180936, at *6 (same). Although the TAC asserts that AMEX must have used Plaintiffs' personal credit histories as a basis for issuing the credit card, the TAC still makes plain that this credit card was issued to SEQL -- the TAC alleges that Manning signed the application for the card to be issued to SEQL, Plaintiffs believed that they would be establishing credit for SEQL, the card was a corporate and/or business credit card, and the charges at issue were for SEQL business expenditures. Doc. No. 89, TAC ¶ 6, at p. 2-4. Given these allegations, the TAC fails to establish that TILA applies.

Plaintiffs' FCRA claim fails because such a claim against a furnisher of credit information such as AMEX stands "only after the furnisher receives notice of such a dispute from the CRA," and "[i]t is only after (1) a consumer has notified a [CRA] of an inaccuracy, (2) the [CRA] has notified the furnisher, and (3) the furnisher has failed to take action, that a consumer may sue the furnisher." *See* Doc. No. 86, 2014 WL 6470595, at *10 (citations and quotations omitted); *see also* Doc. No. 66, 2014 WL 4180936, at *5. Just as with Plaintiffs' previous

pleadings, the TAC includes no allegations that any of the CRA Defendants notified AMEX that Plaintiffs had challenged the AMEX charge, which would trigger AMEX's duty to investigate under FCRA.[6]

And liberally construing the TAC, Plaintiffs do not appear to assert any claims based on a violation of any law other than TILA or FCRA. Although the TAC makes vague reference that AMEX's use of small-print contractual provisions "may be a Constitutional issue," Doc. No. 89, TAC ¶ 6, the TAC never identifies any particular terms of the contract that they take issue with, much less how those terms and/or the contract itself amounts to a Constitutional violation against AMEX, a private entity. To establish a Constitutional claim against AMEX, Plaintiff would need to establish that AMEX acted under "color of state law," *i.e.*, that its conduct "allegedly causing the deprivation of a federal right [was] fairly attributable to the State." See *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012). Needless to say, the TAC includes no such allegations.

---

[6] The failure to allege these FCRA elements is also fatal to the extent Plaintiffs are asserting a second FCRA claim against AMEX for negligent or willful non-compliance with FCRA (Count IV) -- regardless of the theory of liability, any FCRA claim against AMEX requires Plaintiffs to allege that AMEX received notice from a CRA that the consumer has reported an inaccuracy. See Doc. No. 86, 2014 WL 6470595, at *11.

The TAC further refers to AMEX's actions as a "fraudulent scheme," but the court is at a loss as to the basis of any claim based on fraud -- the November 18, 2014 Order warned Plaintiffs must allege "particularized allegations of the circumstances constituting fraud," and the TAC includes no allegations outlining the basis of a fraud claim. Doc. No. 86, 2014 WL 6470595, at *11; *See also Shoppe v. Gucci Am., Inc*., 94 Haw. 368, 386, 14 P.3d 1049, 1067 (2000) (explaining that a claim for fraud requires a plaintiff to establish that "(1) false representations were made by defendants, (2) with knowledge of their falsity (or without knowledge of their truth or falsity), (3) in contemplation of plaintiff's reliance upon these false representations, and (4) plaintiff did rely upon them"). The court therefore finds that the TAC fails to allege any plausible claims for relief.

In opposition, Plaintiffs argue that they are reasserting their TILA claim because they learned only recently through AMEX's counsel that Manning was a principal to the contract for SEQL's credit card such that TILA applies. *See* Doc. No. 99, Pls.' Opp'n at 2. This argument ignores that regardless of Manning's personal liability on the credit card, it was issued in the name SEQL for business expenses, and TILA does not apply to extensions of credit primarily for business purposes.

Plaintiffs' arguments regarding their FCRA claims are equally unavailing. Although Plaintiffs assert that they have included some additional details in the TAC, Doc. No. 99, Pls.' Opp'n at 2, they have still failed to allege the basic elements of a FCRA claim against a furnisher of credit information such as AMEX. And the court has already rejected Plaintiffs' protestations that they need discovery to support their claims -- "'[t]he Supreme Court has stated . . . that plaintiffs must satisfy the pleading requirements of Rule 8 *before* the discovery stage, not after it." Doc. No. 86, 2014 WL 6470595, at *10 n.8 (quoting *Mujica v. AirScan Inc.*, 771 F.3d 580, 593 (9th Cir. 2014); *see also Iqbal*, 556 U.S. at 678-79 (explaining that Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions").

The court therefore GRANTS AMEX's Motion to Dismiss.

**B.     Leave to Amend**

As to whether Plaintiffs should be granted one more opportunity to amend, the court is mindful that "[d]ismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009). Nevertheless, "'[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.'" *Cafasso, U.S. ex rel. v. Gen.*

*Dynamics C4 Sys.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)).

The court has now provided Plaintiffs three opportunities to assert a plausible claim for relief, and each time Plaintiffs have failed to correct the deficiencies outlined by the court, much less make any significant progress towards stating a plausible claim against AMEX. As a result, the court finds that granting Plaintiffs another opportunity to amend would be futile. This dismissal of Plaintiffs' claims against AMEX is without leave to amend.

## V. **CONCLUSION**

Based on the above, the court GRANTS AMEX's Motion to Dismiss, without leave for Plaintiffs to amend as to AMEX. Plaintiffs' claims against the CRA Defendants remain.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 13, 2015.



           /s/ J. Michael Seabright
           J. Michael Seabright
           United States District Judge

*Katz v. Am. Express Co., et al.*, Civ. No. 14-00084 JMS-RLP, Order Granting Defendant American Express Travel Related Service's Motion to Dismiss Plaintiffs' Third Amended Complaint, Doc. No. 91